# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

MARY HEPFNER, MARY NEUMER, and
ROBERT HOFFMAN, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiffs,

    v.

PRA GROUP, INC., and PORTFOLIO
RECOVERY ASSOCIATES, LLC,

        Defendants.

Case No.: 17-cv-1572

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.    This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2.    The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3.    Plaintiff Mary Hepfner ("Hepfner") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.    Plaintiff Mary Neumer ("Neumer") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.    Plaintiff Robert Hoffman ("Hoffman") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6.     Each plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him or her debts allegedly incurred for personal, family or household purposes, namely alleged credit card debts.

7.     Each plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17) in that the alleged debt allegedly arose from a consumer credit transaction.

8.     Defendant PRA Group, Inc. is a debt collection agency with its principal offices located at 120 Corporate Blvd., Norfolk, VA 23502.

9.     Upon information and belief, the entity named "Portfolio Recovery Associates, LLC" is a wholly owned subsidiary of PRA, and its principal offices are also located at 120 Corporate Blvd., Norfolk, VA 23502. Hereafter, both entities will be referred to collectively as "PRA."

10.     Upon information and belief, PRA Group, Inc. purchases and owns consumer debts and Portfolio Recovery Associates, LLC collects those debts on PRA's behalf.

11.     The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

12.     The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible

2

paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'").

13. The primary purpose of PRA's business, and PRA's principal purpose, is the collection of consumer debts. PRA's 2016 Form 10-K states:

> Our primary business is the purchase, collection and management of portfolios of nonperforming loans that have been charged-off by the credit grantor. The accounts we acquire are primarily the unpaid obligations of individuals owed to credit grantors, which include banks and other types of consumer, retail, and auto finance companies. We acquire portfolios of nonperforming loans in two broad categories: Core and Insolvency. Our Core operation specializes in purchasing and collecting receivables. Because the credit grantor and/or other debt servicing companies have unsuccessfully attempted to fully collect these receivables, we are able to purchase them at a substantial discount to their face value. Our Insolvency operation consists primarily of purchasing and collecting accounts that are involved in a Chapter 13 bankruptcy proceeding from credit grantors based in the U.S, but also includes the purchasing and collecting of insolvent accounts in Europe and Canada.

*Available at* https://www.sec.gov/Archives/edgar/data/1185348/000118534816000067/praa-20151231x10k.htm.

14. PRA is engaged in the business of a collection agency, using the mails and telephone to collect defaulted consumer debts.

15. PRA is also engaged in the business of a collection agency under Wisconsin law, in that it purchases and receives assignment of consumer debts that are in default at the time PRA acquires them.

16. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to

Case 2:17-cv-01572-JPS    Filed 11/09/17    Page 3 of 29    Document 1

collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added). On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

17. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

18. PRA is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former consumer credit card accounts. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

19. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

20. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

21. PRA uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

4

22.     A company meeting the definition of a "debt collector" (here, PRA) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

23.     PRA is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

***Facts Relating to Hepfner***

24.     On or about October 8, 2013, Comenity Bank ("Comenity") mailed an account statement to Hepfner regarding an alleged debt, allegedly owed to Comenity for Hepfner's "Boston Store" credit account with an account number ending in 3404. A copy of this account statement is attached to this complaint as Exhibit A.

25.     Exhibit A contains the following:

| | PAGE 1 OF 2 |
|---|---|
| **Payment information** | |
| New balance | $978.98 |
| Minimum payment due | $205.00 |
| Payment due date | 11/03/2013 |

Exhibit A.

26.     Exhibit A also contains the following:

| **Details of your transactions** | | |
|---|---|---|
| TRANS DATE | TRANSACTION DESCRIPTION/LOCATION | AMOUNT |
| **Fees** | | |
| 10/03/2013 | LATE FEE | 35.00 |
| | Total fees charged for this period | $35.00 |
| **Interest charged** | | |
| | Interest charge on purchases | $23.90 |
| | Total interest for this period | $23.90 |

5

Exhibit A.

27.     Exhibit A states that Hepfner's account accrued $23.90 in interest charges during billing cycle closing on October 3, 2013.  Exhibit A.

28.     Exhibit A also states the following:

| Interest charge calculation | | | |
| --- | --- | --- | --- |
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| TYPE OF BALANCE | APR | BALANCE SUBJECT TO INTEREST RATE | INTEREST CHARGE |
| Purchases | 29.9900% (v) | 938.30 | 23.90 |

Exhibit A.

29.     Exhibit A states that the Annual Percentage Rate on Hepfner's account was 29.9900%

30.     Exhibit A also contains the following:

| Additional important messages |
| --- |
| We would sincerely like to help you resolve this matter, yet our previous efforts to work with you have gone unanswered. This is your final opportunity.  Unless we hear from you soon, we will permanently close your account and write it off as a bad debt. Your account will then be turned over to our Recovery team and reviewed by one of our Recovery Specialists.  Visit our online Payment Help Center today at comenity.net/paymenthelp to schedule your payment to bring your account up-to-date or call 1-866-489-1886 (TDD/TTY 1-800-695-1788) to make a payment over the phone or discuss payment options. |

Exhibit A.

31.     Exhibit A informed Hepfner that, as of October 3, 2013, her "New Balance" was $978.98, the minimum payment of $205.00 was due on November 3, 2013, and that, "This is your final opportunity.  Unless we hear from you soon, we will permanently close your account and write it off as a bad debt." Exhibit A.

32.     Hepfner did not make the minimum payment or otherwise contact Comenity by November 3, 2013.

6

33.     Upon information and belief, Comenity "charged off" Hepfner's Boston Store credit account with an account number ending in 3404 on or about November 3, 2013 or shortly thereafter.

34.     Upon information and belief, sometime after October 3, 2013 but before January 12, 2017, Comenity sold or otherwise assigned Plaintiff's Boston Store account to PRA.

35.     On or about January 12, 2017, PRA mailed a debt collection letter to Hepfner regarding an alleged debt, with alleged Seller "COMENITY BANK," alleged Merchant "BOSTON STORE," and alleged Original Creditor "WORLD FINANCIAL NETWORK BANK." A copy of this letter is attached to this complaint as Exhibit B.

36.     The alleged debt identified in Exhibit B is Hepfner's alleged Boston store branded credit card account.

37.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

38.     Upon information and belief, Exhibit B is a form debt collection letter used by Defendant to attempt to collect alleged debts.

39.     Upon information and belief, Exhibit B was the first written communication Defendant sent to Plaintiff regarding the alleged debt Exhibit B attempts to collect.

40.     Exhibit B contains the following:

**Name**: MARY HEPFNER
**Seller:** COMENITY BANK
**Merchant**: BOSTON STORE
**Original Creditor**: WORLD FINANCIAL NETWORK BANK
**Creditor to Whom Debt is Owed**: Portfolio Recovery Associates, LLC
**Account Number:** ███████3404
**Current Balance Due**: $1,003.40

Exhibit B.

41.     Exhibit B states that, as of January 12, 2017, the balance of the alleged debt Hepfner allegedly owed PRA as assignee of Hepfner's Boston Store account was $1,003.40. Exhibit B.

42.     Exhibit B also contains the following:



| PAY THE FULL BALANCE | OR | CHOOSE A SAVINGS PLAN |
|---|---|---|
| 1 Payment of $1,003.40* | | 1 Payment of $753.00 and SAVE $250.40* |
| 6 Monthly Payments of $167.23* | | Pay $134.00 for 6 consecutive months and SAVE $199.40* |
| 12 Monthly Payments of $83.61* | | Pay $71.00 for 12 consecutive months and SAVE $151.40* |
| Your account will be considered "Paid in Full" after your final payment is successfully posted. | | The savings will be applied to the balance and your account will be considered "Settled in Full" after your final payment is successfully posted. |

Exhibit B.

43.     On or about March 9, 2017, PRA mailed a debt collection letter to Hepfner regarding the same alleged debt, allegedly owed to PRA and with Seller "COMENITY BANK FORMERLY KNOWN AS WORLD FINANCIAL NETWORK BANK" and Merchant "BOSTON STORE," with an account number ending in 3404. A copy of this letter is attached to this complaint as Exhibit C.

44.     The alleged debt identified in Exhibit C is an alleged Boston store branded credit card account.

45.     Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

46.     Upon information and belief, Exhibit C is a form debt collection letter used by PRA to attempt to collect alleged debts.

47.     Exhibit C contains the following:

SELLER: COMENITY BANK FORMERLY KNOWN AS WORLD FINANCIAL NETWORK BANK
MERCHANT: BOSTON STORE
ORIGINAL CREDITOR: WORLD FINANCIAL NETWORK BANK
CHARGE-OFF CREDITOR: COMENITY BANK
LAST 4 DIGITS OF CHARGE-OFF ACCOUNT NUMBER: 3404
Charge-Off Balance: $1,003.40
Creditor to Whom Debt is Owed: Portfolio Recovery Associates, LLC          Balance: $978.98

Exhibit C.

48.     Exhibit C states that, as of March 9, 2017, the balance of the alleged debt Hepfner allegedly owed PRA as assignee of Hepfner's Boston Store account was $978.98 but that the "Charge-Off Balance" was $1,003.40.  Exhibit C.

49.     Plaintiff did not make any payment on the account between January 12, 2017, when Defendant sent Exhibit B, and March 9, 2017, when Defendant sent Exhibit C.

50.     Upon information and belief and the investigation of counsel, the amount of the debt was never $1,003.40; rather, the account charged off at $978.98 and never increased or decreased from the time of charge-off.

51.     Upon information and belief, Comenity does not add interest to charged-off accounts.

52.     Upon information and belief, PRA does not add interest to consumer credit card accounts it purchases. Some of PRA's initial "validation" letters to consumers specifically state that PRA will not charge additional interest as an incentive for consumers to pay.

53.     Upon information and belief, PRA incorrectly added a month of interest to Hepfner's account.  At an APR of 29.9900%, an account with a balance of $978.98 would accrue $24.13 in interest over 30 days, with an ending balance of $1,003.11, almost identical to the $1,003.40 balance PRA states in Exhibits B and C.

54.     In Exhibit B, PRA attempts to collect this improperly added interest and used this inflated amount to attempt to induce Hepfner into settling her account.

9

55.     Upon information and belief, PRA reports accounts like Hepfner's to the major credit reporting bureaus as a matter of course.

56.     Upon information and belief, PRA reported Hepfner's account to the three major credit reporting bureaus as being a debt in the amount of $1,003.40.

57.     Moreover, Exhibit C contains multiple contradictory and confusing statements of the amount that PRA was attempting to collect from Plaintiff.

58.     Exhibit C contains the following text:

**Charge-Off Balance: $1,003.40**
**Creditor to Whom Debt is Owed: Portfolio Recovery Associates, LLC**                **Balance: $978.98**

Exhibit C.

59.     Exhibit C is confusing to the unsophisticated consumer. It is unclear whether PRA is collecting the entire $1,003.40 "Charge-Off Balance" or just the $978.98 that is represented to be the "Balance."

60.     Exhibit A also states:

Your account qualifies for our settlement program. Here are three options for you to choose from:

| Single Payment Settlement | 6 Month Payment Plan | 12 Month Payment Plan |
|---|---|---|
| • Save **$293.70 off** the balance<br>• Pay **$685.28** | • Save **$244.76 off** the balance<br>• Pay **$122.37** per month for the next 6 months | • Save **$195.86 off** the balance<br>• Pay **$65.26** per month for the next 12 months |

**Your first payment must be received in our office no later than 04/06/2017. Your account will be considered "Settled in Full" once your final payment is successfully posted.**

Exhibit C.

61.     The above settlement options all add up to the "Balance" of $978.78, and the first payment is stated to be "due in our office no later than 04/06/2017."

62.     Thus, it is unclear if the "balance" of $978.78 is actually a "balance" or a settlement amount that is due by 04/06/2017.

63.     If the unsophisticated consumer sent $978.78 to PRA after 04/06/2017, it is unclear if this amount would resolve the debt or if the actual "balance" would revert to the full "charge off balance" of $1003.40.

### *Facts Relating to Neumer*

64.     On or about April 8, 2017, PRA mailed a debt collection letter to Neumer regarding an alleged debt, allegedly owed to PRA and originally owed to "SYNCHRONY BANK" ("Synchrony"). A copy of this letter is attached to this complaint as Exhibit D.

65.     The alleged debt identified in Exhibit D is an alleged credit card account, originally owed to Synchrony and purchased by PRA. It was a "Walmart"-branded credit card.

66.     Neumer used this credit card only for personal, family or household purposes, namely, purchases of household goods and services, including purchases at Walmart stores. Neumer did not open or use the credit card account for any business purpose.

67.     The credit card account identified in Exhibit D was in default, closed, and upon information and belief, charged off by Synchrony before Synchrony sold the account to PRA.

68.     Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Neumer inserted by computer.

69.     Upon information and belief, Exhibit D is a form debt collection letter used by PRA to attempt to collect alleged debts.

70.     Exhibit D states that the "Balance" of the account is "$649.97."

71.     Exhibit D then states the following:



**Account Offers**

**Single Payment\***
**Savings Plan**
Pay $520.00
and **SAVE $129.97**

**12 Month\***
**Savings Plan**
Pay $46.00 for
12 consecutive months and
**SAVE $97.97**

**25 Month\***
**Installment Option**
Pay $25.99 for
25 consecutive months

**Savings Plan:** The savings will be applied to the balance and your account will be considered "Settled in Full" after your final payment is successfully posted.

**Installment Option:** Your account will be considered "Paid in Full" after your final payment is successfully posted.

**Your first payment must be received NO LATER than: 05/12/2017**

*\*We are not obligated to renew this offer.*

<u>Exhibit D</u>.

72.     The "25 Month Installment Option" in <u>Exhibit B</u> is confusing to the unsophisticated consumer.

73.     If a consumer pays "$25.99 for 25 consecutive months," the consumer will have paid PRA a total of $649.75. This amount is less than the stated Balance of $649.97.

74.     It is not clear whether the consumer would have to pay the additional balance at the end of the payment plan. Unlike the other options which expressly state how much the money the consumer would "**SAVE**," the 25 Month Installment Option does not identify any amount that the consumer would "**SAVE**."

75.     Moreover, both the "single payment" and "12 month installment" options disclose that "Your account will be considered 'Settled in full' after your final payment is posted."

76.     The "Settled in full" designation refers to credit reporting. An account that is "Settled in full" is a negative item in a consumer's credit file.

77.     In contrast, the 25 month installment option states: "Your account will be considered 'Paid in full' after your final payment is posted."

78.     "Paid in full" also refers to credit reporting. A delinquent account that is "Paid in full" is also a negative item, but it has a less negative impact on a consumer's creditworthiness than a settled account does. Thus, all other variables being equal, a consumer who pays off a

collection account in full would end up with a higher "credit score" than one who settles the same account.

79.     If a consumer successfully completed 25 monthly payments of $25.99, it is not clear whether she would have to also pay the remaining balance in order for the account to be reported as "Paid in full," or whether PRA would actually report the account as "Settled in full" due to the remaining balance, or whether PRA would forgive the remaining balance and still report the account as "Paid in full."

80.     The consumer would be at a loss to determine the actual effects, on both the balance and her credit, of doing exactly what PRA told her to do.

### *Facts Relating to Plaintiff Hoffman*

81.     On or about December 16, 2016, Capital One Services, LLC ("Capital One") mailed Plaintiff Hoffman a notice of assignment letter regarding an alleged debt that was allegedly originally owned by Capital One but that had been assigned to PRA.  A copy of this letter is attached to this complaint as Exhibit E.

82.     Plaintiff Hoffman used this Capital One credit card only for personal, family or household purposes, namely, purchases of household goods and services. Plaintiff Hoffman did not open or use the credit card account for any business purpose.

83.     Exhibit E contains the following:

December 16, 2016

ROBERT L HOFFMAN
2738 E BOULEVARD AVE APT 12
SAINT FRANCIS, WI 53235

3584
UPGR

Re: Account Number : █████████ 2790
Capital One

Dear ROBERT L HOFFMAN,

We wanted to let you know about a change to your credit card account referenced above. Your credit card account with a balance of $987.82 was acquired by Portfolio Recovery Associates, LLC on or about December 15, 2016. Portfolio Recovery Associates, LLC now owns your account and may contact you either directly or through an affiliate or third party.

If you have any questions about your account, please contact Portfolio Recovery Associates, LLC at:

Portfolio Recovery Associates, LLC
1-800-772-1413
PO Box 12914

Exhibit E.

84.     Exhibit E, sent on December 16, 2016, states that Plaintiff's Capital One account with an account number ending in 2790 was sold to PRA on December 15, 2016.

85.     On or about January 18, 2017, PRA mailed Plaintiff Hoffman a debt collection letter regarding the same alleged debt, allegedly owed to PRA and with Original Creditor Capital One.  A copy of this letter is attached to this complaint as Exhibit F.

86.     Upon information and belief, Exhibit F is a form letter, generated by computer, and with the information specific to Plaintiff Hoffman inserted by computer.

87.     Upon information and belief, Exhibit F is a form debt collection letter used by PRA to attempt to collect alleged debts.

88.     Upon information and belief, Exhibit F was the first written communication PRA sent to Plaintiff Hoffman regarding the alleged debt referenced in Exhibit F.

14

89.     Exhibit F contains the statutory validation notice that debt collectors are required

by the FDCPA to send along with the initial written communication.  *See* 15 U.S.C. § 1692g.

90.     Exhibit F also contains the following:

PRA, LLC purchased account ▮▮▮▮▮▮2790 on 12/20/2016. All future payments and correspondence for this
account, including credit counseling service payments, should be directed to us.

Exhibit F.

91.     Exhibit F states that PRA purchased Plaintiff Hoffman's Capital One account on

December 20, 2016, four days after Capital One sent Exhibit E, informing Plaintiff Hoffman that

PRA purchased that account on December 15, 2016.

92.     Exhibit F also contains the following:

**Seller:** CAPITAL ONE BANK (USA) N.A.
**Original Creditor:** CAPITAL ONE BANK (USA) N.A.
**Original Creditor Address:** 4851 COX ROAD, GLEN ALLEN VA 23060
**Creditor to Whom Debt is Owed:** PORTFOLIO RECOVERY ASSOCIATES, LLC
**Account Number:** ▮▮▮▮▮2790
**Current Balance:** $987.82

Exhibit F.

93.     Exhibit F also contains a payment remittance slip, which includes the following:

DEPT 922     2968181317018
PO BOX 4115
CONCORD CA 94524

|||||||||||||||||||||||||||||||||||||||||||||||

ADDRESS SERVICE REQUESTED

#BWNFTZF #9222968181317018#

ROBERT L HOFFMAN
2738 E BOLIVAR AVE APT 12
SAINT FRANCIS WI 53235-5414

Account Number: ▮▮▮▮▮2790

Payment Amount: _____

001
PORTFOLIO RECOVERY ASSOCIATES, LLC
P.O. Box 12914
Norfolk VA 23541

Exhibit F.

15

94.  <u>Exhibit F</u> states that Plaintiff Hoffman's account number with PRA is the same account number that Capital One used.  Nowhere in <u>Exhibit F</u> does PRA state a different account number for Plaintiff Hoffman's debt.

95.  Looking at <u>Exhibits E and F</u> together, it is unclear whether the account had actually been sold or whether Capital One still owned the account and PRA was acting as a third-party debt collector rather than the current creditor.  PRA provides Capital One's address in the header rather than its own, the account number has not changed, and PRA claims to have purchased the account *after* Capital One sent its Notice of Assignment.

96.  On or about March 8, 2017, PRA mailed Plaintiff Hoffman a debt collection letter regarding the same alleged debt, allegedly owed to PRA and with Original Creditor Capital One.  A copy of this letter is attached to this complaint as <u>Exhibit G</u>.

97.  Upon information and belief, <u>Exhibit G</u> is a form letter, generated by computer, and with the information specific to Plaintiff Hoffman inserted by computer.

98.  Upon information and belief, <u>Exhibit G</u> is a form debt collection letter used by PRA to attempt to collect alleged debts.

99.  <u>Exhibit G</u> states that the "Balance" of the account is "$987.82."

100.  <u>Exhibit G</u> then states the following:



**Account Offers**

New & Improved!
Access your
account anytime
from
www.prapay.com*

**Single Payment***
**Savings Plan**
Pay $790.00
and **SAVE $197.82**

**12 Month***
**Savings Plan**
Pay $70.00 for
12 consecutive months and
**SAVE $147.82**

**39 Month***
**Installment Option**
Pay $25.32 for
39 consecutive months

The savings will be applied to the balance and your account will be considered 'Settled in Full' after your final payment is successfully posted.

Your account will be considered "Paid in Full" after your final payment is successfully posted.

**Your first payment must be received NO LATER than: 04/07/2017**
*We are not obligated to renew this offer.

16

Exhibit G.

101.    The "39 Month Installment Option" in Exhibit G is confusing to the unsophisticated consumer.

102.    If a consumer pays "$25.32 for 39 consecutive months," the consumer will have paid PRA a total of $987.48. This amount is less than the stated Balance of $987.82.

103.    It is not clear whether the consumer would have to pay the additional balance at the end of the payment plan. Unlike the other options which expressly state how much the money the consumer would "**SAVE**," the 39 Month Installment Option does not identify any amount that the consumer would "**SAVE**."

104.    Moreover, both the "single payment" and "12 month installment" options disclose that "Your account will be considered 'Settled in full' after your final payment is posted."

105.    The "Settled in full" designation refers to credit reporting. An account that is "Settled in full" is a negative item in a consumer's credit file.

106.    In contrast, the 39 month installment option states: "Your account will be considered 'Paid in full' after your final payment is posted."

107.    "Paid in full" also refers to credit reporting. A delinquent account that is "Paid in full" is also a negative item, but it has a less negative impact on a consumer's creditworthiness than a settled account does. Thus, all other variables being equal, a consumer who pays off a collection account in full would end up with a higher "credit score" than one who settles the same account.

108.    If a consumer successfully completed 39 monthly payments of $25.32, it is not clear whether she would have to also pay the remaining balance in order for the account to be reported as "Paid in full," or whether PRA would actually report the account as "Settled in full"

17

due to the remaining balance, or whether PRA would forgive the remaining balance and still report the account as "Paid in full."

109.    The consumer would be at a loss to determine the actual effects, on both the balance and her credit, of doing exactly what PRA told her to do.

## THE FAIR DEBT COLLECTION PRACTICES ACT,
## 15 U.S.C. § 1692 ET SEQ.

110.    The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

111.    The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

18

112. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

113. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

114. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan*

19

*Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

115. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

116. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan

agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

117. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." Whichever number PRA is truly collecting, it should only represent that amount as the "balance" in the letter.

118. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). The balance specified in <u>Exhibit C</u> may be insufficient to resolve the whole debt after 04/06/2017. It is possible that PRA could continue to collect the entire remaining "charge off balance," if the "balance" was merely a settlement offer, and past 04/05/2017, the "balance" essentially expires.

119. The different balance amounts on <u>Exhibit C</u> render <u>Exhibit C</u> confusing to the unsophisticated consumer, who would not be able to determine, or would be confused as to, which amount PRA was actually attempting to collect.

120. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

121. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of – the character, amount, or legal status of any debt."

122. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

123. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

124.    15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

125.    15 U.S.C. § 1692g states:

a) Notice of debt; contents

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

> (2) the name of the creditor to whom the debt is owed;

126.    The Seventh Circuit has held that debt collector must make the 15 U.S.C. § 1692g disclosures in a non-confusing manner. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

### *The Wisconsin Consumer Act ("WCA")*
### *Ch. 421-427, Wis. Stats.*

127.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

128.    The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 **n.**15, 596 N.W.2d 786 (1999) (citations omitted).

129.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

22

130. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

131. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

132. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

133. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

134. Wis. Stat. § 427.104(1)(c) states that a debt collector may not: "Disclose or threaten to disclose information adversely affecting the customer's reputation for credit worthiness with knowledge or reason to know that the information is false."

23

135. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

136. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

137. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

138. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

139. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

140. Count I is brought on behalf of Hepfner.

141. Exhibit B falsely states that Hepfner's "Current Balance Due" on January 12, 2017 was $1,003.40.

142. In Exhibit B, Defendant attempted to induce Hepfner to enter a settlement agreement based on a false statement of the balance that was due.

143. Exhibit C falsely states that Hepfner's "Charge-Off Balance" was $1,003.40.

144. In Exhibit C, Defendant attempted to hide its improper interest charge and toll the statute of limitations by making it appear as if Hepfner made a payment on the account after it was charged off.

145. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692f(1).

24

## COUNT II – FDCPA

146.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

147.    Count II is brought on behalf of Hepfner.

148.    PRA represented the amount of the debt that PRA was attempting to collect in a confusing manner by stating multiple amounts that PRA was attempting to collect. Exhibit C.

149.    The unsophisticated consumer would be confused as to whether PRA was attempting to collect only the "balance" or the "charge off balance."

150.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692(f).

## COUNT III – FDCPA

151.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

152.    Count III is brought on behalf of Plaintiff Hoffman.

153.    The unsophisticated consumer, considering Exhibits E and F together would be unable to tell whether the account had actually been sold and would be confused as to whether Defendant was acting as a third-party debt collector rather than as the assignee.

154.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692g(a)(2).

## COUNT IV – FDCPA

155.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

156.    Count IV is brought on behalf of Plaintiffs Neumer and Hoffman.

157.    The "Installment Options" on Exhibits D and G are facially confusing to the unsophisticated consumer.

25

158.    If a consumer made the requested payments, the consumer would not have paid the entire balance of the debt.  It is not possible to determine whether the consumer is responsible for the remaining balance, or whether the account is completely resolved.

159.    Defendant violated §§ 1692e, 1692e(2)(a), and 1692e(10).

## COUNT V – WCA

160.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

161.    Count V is brought on behalf of Hepfner.

162.    <u>Exhibit B</u> falsely states that Hepfner's "Current Balance Due" on January 12, 2017 was $1,003.40.

163.    In <u>Exhibit B</u>, Defendant attempted to induce Hepfner to enter a settlement agreement based on a false statement of the balance that was due.

164.    <u>Exhibit C</u> falsely states that Hepfner's "Charge-Off Balance" was $1,003.40.

165.    In <u>Exhibit C</u>, Defendant attempted to hide its improper interest charge and toll the statute of limitations by making it appear as if Hepfner made a payment on the account after it was charged off.

166.    Upon information and belief, Defendant reported inflated balances of Hepfner's alleged debt to the credit reporting bureaus, which reports adversely affected Hepfner's reputation for credit worthiness.

167.    Defendant violated Wis. Stat. §§ 427.104(1)(c), 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

168.    Plaintiffs bring this action on behalf three classes.

26

169.    Class I ("False Interest Class") consists of (a) all natural persons in the State of Wisconsin (b) whose Comenity accounts were incurred for personal, family, or household purposes, (c) sold to Defendant at or about the same time as Hepfner's, (d) and who were later sent a collection letter in the form represented by <u>Exhibit C</u> to the complaint in this action, (e) between November 9, 2016 and November 9, 2017, inclusive, (f) that was not returned by the postal service.  Hepfner is the named representative for Class I.

170.    Class II ("Confusing Creditor Class") consists of (a) all natural persons in the State of Wisconsin (b) whose Capital One accounts were incurred for personal, family, or household purposes, (c) sold to Defendant at or about the same time as Plaintiff Hoffman's, (d) and who were later sent a collection letter in the form represented by <u>Exhibit F</u> to the complaint in this action, (e) between November 9, 2016 and November 9, 2017, inclusive, (f) that was not returned by the postal service.  Plaintiff Hoffman is the named representative for Class II.

171.    Class III ("Installment Options Class") consists of (a) all natural persons in the State of Wisconsin (b) whose debts were incurred for personal, family, or household purposes, (c) later sold to Defendant, (d) and who were sent a collection letter in the form represented by <u>Exhibits D and/or G</u> to the complaint in this action, (e) between November 9, 2016 and November 9, 2017, inclusive, (f) that was not returned by the postal service. Plaintiffs Neumer and Hoffman are the named representatives for Class III.

172.    Each Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of each Class.

173.    There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant complied with the FDCPA and WCA.

27

174. Plaintiffs' claims are typical of the claims of the members of the Classes. All are based on the same factual and legal theories.

175. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

176. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

177. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)   actual damages;

(b)   statutory damages;

(c)   punitive damages;

(d)   attorneys' fees, litigation expenses and costs of suit; and

(e)   such other or further relief as the Court deems proper.

Dated:  November 8, 2017

**ADEMI & O'REILLY, LLP**

By:   s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com

jfruchter@ademilaw.com
bslatky@ademilaw.com

29